I HEREBY CERTIFY THAT THIS
DOCUMENT WAS SERVED BY FIRST
CLASS MAIL, POSTAGE PREPAID, TO
(SEE BELOW) AT THEIR RESPECTIVE
MOST RECENT ADDRESS OF RECORD IN
THIS ACTION ON THIS DATE

TO:          DATE:     DEPUTY CLERK:

Plaintiff     11/20/18     N. Boehme

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| DOUGLAS LEE HOPPER,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF RIVERSIDE, et al.,<br><br>        Defendants. | No. ED CV 18-01277-JAK (DFM)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## BACKGROUND

On June 13, 2018, Douglas Lee Hopper ("Plaintiff") filed this pro se civil rights complaint under 42 U.S.C. § 1983. See Dkt. 1 ("Complaint"). Plaintiff also sought leave to proceed without prepayment of filing fees. See Dkt. 5. The Court granted Plaintiff's request to proceed without prepayment of filing fees. See Dkt. 6. The Complaint names the following defendants: (1) Dr. Watkins; (2) Riverside University Health System ("RUHS")[1]; (3) Doe No. 4, an

---

[1] The Complaint misidentifies RUHS as Riverside University Health

orthopedic specialist; (4) Doe No. 2, a nurse; (5) Riverside County (the "County"); (6) Riverside County Sheriff's Department ("RCSD"); (7) Deputy Gaeta; (8) Sergeant Gemende; (9) Sheriff Stan Sniff; (10) Captain David Kondrit; (11) Doe No. 1, a captain; and (12) Doe No. 3, a sergeant. See Complaint at 3-7.[2] All individual defendants are named in both their individual and official capacity. See id.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint to determine whether it is frivolous or malicious, fails to state a claim on which relief might be granted, or seeks monetary relief against a defendant who is immune from such relief. As discussed below, the Complaint suffers from deficiencies and must be dismissed.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff was a pretrial detainee in the custody of RCSD from January 13, 2017, through August 3, 2017, while awaiting proceedings under California's Sexually Violent Predator Act ("SVPA"). See Complaint at 11. Plaintiff's claims arise from his detention at Larry D. Smith Correctional Facility in Banning, California, and Robert Presley Detention Center in Riverside, California during this period. See id. at 21-22.

Plaintiff alleges that because he was an SVPA detainee, he was housed in administrative segregation, where he faced "constant harassment from criminal inmates" who threatened him with violence due to his status as an SVPA detainee. Id. at 19, 21-22. Plaintiff complains that he was cross-chained[3]

---

Center. See Complaint at 3.

[2] All page citations are to the CM/ECF pagination.

[3] According to the Complaint, cross-chaining is a practice in which the inmate's right hand is chained tightly across the body to the left waist chain

2

while being transported and had fewer privileges compared to non-SVPA detainees, such as reduced privacy, phone access, and outdoor recreation time and the inability to participate in group worship services. See id. at 19-20, 26-28. Plaintiff alleges that he was denied access to cleaning supplies for his cell despite making multiple requests, exposing him to mold and fungus and causing him to develop a respiratory condition. See id. at 27-28. Plaintiff also alleges that he received improper medical care because he did not receive proper wound care after receiving stitches and after skin biopsies, which led to an infection. See id. at 23-24. Additionally, Plaintiff requested replacement glasses and care for his injured nose during an "incident" from January 11, 2017, for his chronic pain from injuries suffered in 2001, and for an injury to his left shoulder, but did not receive proper care. See id. Plaintiff alleges that he sent a letter to Kondrit alerting him to the reduced privileges of SVPA detainees, including the practice of cross-chaining during transportation, but that his situation did not change even after Doe 3 replied on Kondrit's behalf. See id. at 29-31. Plaintiff further alleges that he sent a letter to Sniff informing him of the conditions of Plaintiff's confinement and that Sniff failed to intervene. See id. at 30.

Plaintiff seeks both damages and injunctive relief. See id. at 9-10, 46-49.

### III.

### STANDARD OF REVIEW

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states

---

and the inmate's left hand is chained tightly across the body to the right waist chain. See Complaint at 27.

a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Because Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford him the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). But "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and alteration omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, it has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See id. at 1130-31; see also Cato

4

v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). But if after careful consideration it is clear that a complaint cannot be cured by amendment, the Court may dismiss it without leave to amend. See Cato, 70 F.3d at 1105-06; see also Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" when plaintiffs could not cure the "basic flaw" in the pleading); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

## IV.
## DISCUSSION

### A.   Identification of Doe Defendants

Plaintiff identifies four "Doe" defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespi v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is responsible for obtaining the full name of each defendant named in any amended complaint. Failure to do so will result in dismissal of claims against these four "Doe" defendants.

Plaintiff is entitled to conduct discovery in order to obtain this information. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) ("[W]here the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." (quoting Gillespie, 629 F.2d at 642)). Accordingly, if Plaintiff does not know the full names of the defendants identified above, he must promptly

5

pursue discovery by immediately serving written interrogatories on the appropriately named defendants or depositions upon written questions on non-parties and requested the names or identities of the Doe defendants. Plaintiff may then discover and substitute the full names of those defendants who are inadequately identified in the current complaint.

Accordingly, the Court authorizes Plaintiff to submit depositions upon written questions to the County to determine the name of the Doe defendants. Plaintiff's discovery shall be served under Federal Rule of Civil Procedure 31, which is set forth in full at the end of this Order. Plaintiff must limit the scope of any discovery request to the identification of the full name of Doe 1, referred to in the Complaint as a captain and jail commander within RCSD; Doe 2, referred to in the Complaint as a nurse within RCSD; Doe 3, referred to in the Complaint as a transportation sergeant within RCSD; and Doe 4, referred to in the Complaint as an orthopedic specialist at RUHS.

**B.    Official-Capacity Claims**

Plaintiff sues all individual defendants in their official and individual capacity. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Such a suit "is <u>not</u> a suit against the official personally, for the real party in interest is the entity." <u>Id.</u> Official-capacity claims are "another way of pleading an action against an entity of which an officer is an agent." <u>Hafter v. Melo</u>, 502 U.S. 21, 25 (1991) (quoting <u>Monell v. Dep't of Soc. Servs. of City of N.Y</u>, 436 U.S. 658, 690 n.5 (1978)). If a government entity is named as a defendant, it is not only unnecessary and redundant to name individual officers in their official capacity, but also improper. <u>See</u> <u>Ctr. for Bio–Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't</u>, 533 F.3d 780, 799 (9th Cir. 2008). Here, RUHS, RCSD, and the County are named defendants and each of the individual defendants is alleged to be an employee of either RUHS, RCSD, or

6

the County at the time of the events in question. Accordingly, Plaintiff's claims against the individual defendants in their official capacity are duplicative and subject to dismissal.

## C. *Monell* **Claims**

A local government entity such as the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell</u>, 436 U.S. at 694.[4] Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> Thus, the County may not be held liable for the alleged actions of its agents unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91.

Plaintiff has failed to identify any specific policy statements or regulations of the County, or any officially adopted or promulgated decisions, the execution of which inflicted the alleged injuries. Moreover, aside from describing his own experiences seeking medical attention and the conditions of his confinement he faced as an SVPA detainee, <u>see</u> Complaint at 26-29, and notwithstanding his conclusory allegation that the County's "official policies

---

[4] For purposes of this Order, the Court treats Plaintiff's claims against RUHS and RCSD as tantamount to claims against the County. <u>See</u> <u>Vance v. Cty. of Santa Clara</u>, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (holding that naming municipal department as defendant is not appropriate means of pleading § 1983 action against municipality); <u>Williams v. Cty. of Santa Clara</u>, No. 15-4859, 2016 WL 879837, at *1 n.1 (N.D. Cal. Mar. 8, 2016) (dismissing county hospital as improper defendant in § 1983 action).

and customs are the cause of the harms" alleged, see id. at 12, Plaintiff has failed to allege facts sufficient for the Court to draw the reasonable inference that the County has a governmental custom of committing the illegal acts alleged. See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); Thompson v. City of L.A., 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds by Bull v. City & Cty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). The Complaint thus fails to state a claim against the County.

**D.  Deliberate Medical Indifference Claims**

Plaintiff's deliberate indifference claims arise from medical care that occurred while he was a civil detainee awaiting proceedings under the SVPA. See Complaint at 11-17. A pretrial detainee's claim of the denial of the right to adequate medical care arises under the Fourteenth Amendment and is analyzed under an objective deliberate indifference standard. See Gordon v. Cty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The elements of such a claim are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and

circumstances of each particular case.'" Id. (quoting Castro v. City of L.A., 833 F.3d 1060, 1071 (9th Cir. 2016)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. (quoting Castro, 833 F.3d at 1071). The "mere lack of due care" is insufficient. Id. (internal quotation omitted).

Plaintiff alleges that Doe 4 provided inadequate medical care when he performed only a "perfunctory physical examination," declined to order diagnostic tests on Plaintiff's left shoulder, disregarded his complaints of pain, and instead referred Plaintiff to physical therapy. Complaint at 28. Plaintiff also alleges that after a physical therapist referred him back to Doe 4, he was "never called for additional or follow-up visits" and eventually needed shoulder surgery once transferred to Coalinga State Hospital. Id. However, Plaintiff has not alleged that Doe 4 acted with reckless disregard in referring him to physical therapy. See Gordon, 888 F.3d at 1125. Plaintiff fails to state a claim by stating merely that he disagreed with the course of treatment Doe 4 ordered. See, e.g., Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996) ("[W]here a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference."); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989) (finding plaintiff's allegations that prison officials failed to recommend surgery as one doctor had advised evidenced only a mere "difference of medical opinion" which did not constitute medical indifference); see also Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986) ("[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment."), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014). Plaintiff also does not indicate whether he requested further treatment from Doe 4 after seeing the physical therapist and whether Doe 4 refused his requests. Plaintiff therefore

9

fails to state a claim against Doe 4.

Plaintiff also alleges that Doe 2 "refused to provide treatment" for his wounds as ordered by a doctor, resulting in infection. <u>See</u> Complaint at 29. These allegations do not suggest that Doe 2 acted with reckless disregard to Plaintiff's medical circumstances or that her actions were objectively unreasonable beyond mere negligence or malpractice. <u>See</u> <u>Gordon</u>, 888 F.3d at 1125. Likewise, Plaintiff's allegation that Doctor Watkins "failed to provide requested necessary treatment on multiple occasions" and therefore violated Plaintiff's constitutional rights is conclusory, as Plaintiff provides no facts supporting this allegation. <u>See</u> Complaint at 14. This Court therefore concludes that Plaintiff fails to state a claim against either Doe 2 or Watkins.

## E.   <u>Conditions of Confinement Claims</u>

Plaintiff alleges that various conditions of his confinement violated his constitutional rights.[5] <u>See</u> Complaint at 11-17.

The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from being held in conditions that "amount to punishment." <u>Bell</u>, 441 U.S. at 535. Accordingly, the Ninth Circuit has held that individuals awaiting proceedings under the SVPA are "entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual

---

[5] Plaintiff alleges that the conditions of his confinement violated his rights under the Eighth and Fourteenth Amendments. <u>See</u> Complaint at 11-17. However, Plaintiff was a civil detainee awaiting proceedings under the SVPA at the time of all relevant events. <u>See</u> <u>id.</u> The Eighth Amendment does not apply to pretrial detainees. <u>See</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Rather, claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979).

accused but not convicted of a crime." <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004). Conditions of confinement are presumptively punitive where (1) they are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held" or (2) they are "more restrictive than those the individual would face following SVPA commitment." <u>King v. Cty. of Los Angeles</u>, 885 F.3d 548, 557 (9th Cir. 2018) (alteration in original) (quoting <u>Jones</u>, 393 F.3d at 932-33). Where either presumption applies, "the burden shifts to the defendant to show (1) 'legitimate, non-punitive interests justifying the conditions of [the detainee's] confinement' and (2) 'that the restrictions imposed . . . [are] not excessive in relation to these interests.'" <u>Id.</u> (quoting <u>Jones</u>, 393 F.3d at 935) (internal quotation marks omitted).

### 1.    <u>Transportation</u>

Plaintiff alleges that he was cross-chained while he was transported for all appointments, including court appearances and medical appointments, and that he remained cross-chained for "extended periods of time, sometimes continuously for many hours." Complaint at 20. Plaintiff further alleges that pretrial criminal detainees were not cross-chained during transportation, that these restraints were normally reserved for inmates in administrative segregation with a history of behavioral issues or violence, and that this practice resulted in harsher treatment than individuals committed under the SVPA face.[6] <u>See</u> <u>id.</u> at 20, 27, 42.

---

[6] Plaintiff requests that the Court take judicial notice of information displayed by a state website describing the conditions of confinement at Coalinga State Hospital. <u>See</u> Complaint at 31; California Dep't of State Hospitals – Coalinga, http://dsh.ca.gov/coalinga/.

Federal Rule of Evidence 201 permits courts to take judicial notice of a fact not subject to reasonable dispute because it: (1) is generally known within

11

a. Gaeta

Plaintiff alleges that Gaeta was "personally responsible" for cross-chaining him. Id. at 14. Because Plaintiff alleges that the practice of cross-chaining subjects him to a restriction that neither his criminal detainee counterparts nor individuals civilly committed under SVPA face, Plaintiff has alleged facts raising both Jones presumptions of unconstitutionally punitive conditions, thus shifting the burden of proof. See Jones, 383 F.3d at 932-33. For the purposes of screening, Plaintiff has sufficiently alleged that Gaeta violated his constitutional rights by imposing subjecting him to cross-chaining as a condition of his confinement.[7]

---

the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The information on the state website fits into neither of these categories. Accordingly, the Court will take judicial notice of the existence of this website and its contents, but not of the truth of the statements asserted therein.

In support of his request, Plaintiff cites Daniels-Hall v. National Education Association, 629 F.3d 992, 998-99 (9th Cir. 2010) (finding lists of approved vendors displayed on government websites appropriate for judicial notice where neither party disputed authenticity of websites or accuracy of information). Plaintiff's request is distinguishable because no defendant has appeared in this case or had the opportunity to dispute the information displayed on the state website. See id.

[7] The Court does not interpret Plaintiff's allegations about cross-chaining as a separate claim of excessive force, although at times Plaintiff uses the vernacular of excessive force. See Complaint at 14, 20, 42. To the extent that Plaintiff intends to raise an excessive force claim, he should describe a particular instance of cross-chaining or other excessive force and explain the level of disciplinary force needed in that situation. See Kingsley v. Hendrickson, --- U.S. ---, 135 S. Ct. 2466, 2473 (2015) (holding that relevant factors in excessive force determination include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

### b.    Supervisory Claims

Plaintiff appears to name Gemende, Sniff, Kondrit, Doe No. 1, and Doe No. 3 as defendants based on supervisory liability. See Complaint at 12-16. Supervisory personnel are generally not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See, e.g., Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

In Iqbal, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability." 556 U.S. at 676. However, the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). The Ninth Circuit thus held:

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'

---

amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting").

'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Id. at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiff alleges that he wrote a letter informing Kondrit that he was cross-chained while being transported, that these conditions were punitive and violative of Jones, and that the cross-chaining continued despite his letter. See Complaint at 29-31. Viewed in the light most favorable to Plaintiff, the Court finds that these allegations arguably state a claim that Kondrit knowingly acquiesced to a constitutional violation.

Plaintiff also alleges that he met with Doe 3, who stated she was responsible for replying to Plaintiff's complaints to Kondrit regarding cross-chaining, that Doe 3 had authority to stop the cross-chaining but declined to do so, and that the cross-chaining continued. See Complaint at 30-31. Although Plaintiff has arguably stated a claim against Doe 3, Plaintiff is reminded that he is responsible for substituting the name of Doe 3 in any amended complaint. See supra Section IV.A.

14

With respect to claims against Gemende, Sniff, and Doe No. 1, Plaintiff fails to state a claim regarding cross-chaining. Plaintiff fails to set forth any specific allegations that they personally participated in the practice of cross-chaining Plaintiff during transportation. Nor does Plaintiff set forth any factual allegations that they personally promulgated any specific policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to other defendants' alleged conduct. Although Plaintiff states that he sent Sniff a letter complaining of his conditions of confinement and that Sniff failed to act, Plaintiff does not indicate which conditions he related to Sniff in his letter, and therefore fails to allege that Sniff knowingly acquiesced to cross-chaining during transportation. Accordingly, Plaintiff's claims against Gemende, Sniff, and Doe No. 1 based on the practice of cross-chaining are subject to dismissal.

### 2. Privileges, Sanitation, Segregation, and Lack of Privacy

Plaintiff's remaining allegations concerning the conditions of his confinement fail to state a claim against any defendant. Plaintiff alleges that he was housed in administrative segregation and was denied various privileges, including outdoor exercise, recreational activities, visiting privileges, phone access, and the ability to associate with other SVPA detainees. See Complaint at 26, 50. Plaintiff also alleges that he was "continuously recorded in and around the living area of his cell," including while entering or exiting the showers and while using the restroom. Id. at 19. Plaintiff complains that his multiple requests for cleaning supplies for his cell and living areas were denied, exposing him to mold and fungus. See id. at 27-28.

Aside from conclusory statements that various defendants had policies of imposing these conditions of confinement, see id. at 31-34, 37-38, 40, 43-45, Plaintiff does not set forth any factual allegations that any particular defendant personally participated in any of the alleged constitutional violations,

personally promulgated any policy that had a direct causal connection to any of these violations, or knowingly acquiesced to the violations. See Starr, 652 F.3d at 1207-1208. Plaintiff indicates that he sent letters and filed grievances making Kondrit, Sniff, Gemende, and Doe 1 aware of the allegedly unconstitutional conditions of his confinement but does not specify which particular conditions (other than cross-chaining) he mentioned in these complaints. See Complaint at 13-15, 29-31. Nor does Plaintiff indicate who denied him access to cleaning supplies. See id. at 27-28. To the extent that Plaintiff's claims arise from failure to train, Plaintiff provides no facts to support these allegations. See id. at 37-38. Accordingly, aside from his transportation claims, Plaintiff has failed to state a claim against any defendant regarding conditions of confinement.

**F.    First Amendment Claims**

Convicted inmates "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq. Due to the mere fact of incarceration, however, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). As a result, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Similar principles apply with respect to pretrial detainees. See Bell, 441 U.S. at 545 (pretrial detainees retain "at least" the same constitutional rights as convicted prisoners, including "freedom of . . . religion under the First and Fourteenth Amendments") (citations omitted); Pierce v. Cty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (noting "as with other First Amendment rights in the

inmate context, detainees' rights may be limited or retracted if required to 'maintain [ ] institutional security and preserv[e] internal order and discipline'" (citations omitted; alterations in original).

To state a viable free exercise claim, a pretrial detainee essentially must allege that a government official (1) "substantially burden[ed]" the plaintiff's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner—i.e., the official's actions were not "reasonably related to legitimate penological interests." Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015); see also Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones, 791 F.3d at 1031-33 (a "substantial burden" must be "more than an inconvenience on religious exercise") (citations omitted). "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. Holt v. Hobbs, --- U.S. ---, 135 S. Ct. 853, 862 (2015).

Plaintiff alleges that he was denied the opportunity to attend group worship services, see Complaint at 22, and that Sniff, Kondrit, and the County violated his First Amendment rights through making and implementing policies causing this deprivation, see id. at 43. As explained supra in Sections IV.C and IV.E.2, however, Plaintiff fails to allege facts establishing Monell liability for the County or supervisory liability for the individual defendants. Furthermore, Plaintiff does not allege a sincerely held religious belief. Nor does he explain how the lack of group worship services substantially burdens his religious practices such that it amounts to a constitutional violation. See Abpikar v. Martin, No. 11-1793, 2015 WL 4413841, at *5 (E.D. Cal. July 17, 2015) (dismissing First Amendment free exercise of religion claim where

plaintiff was denied participation in group worship services but failed to allege facts showing denial placed a substantial burden on the exercise of his religion). Plaintiff also fails to allege whether the denial was reasonably related to legitimate penological interests and whether he had alternative means to practice his religion. Therefore, Plaintiff's First Amendment claims must be dismissed.

**G.    Religious Land Use and Institutionalized Persons Act Claim**

Plaintiff asserts that the County is separately liable under the Religious Land Use and Institutionalized Persons Act (RLUIPA) for denying him access to group worship. See Complaint at 43. The RLUIPA provides that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

To state a claim under RLUIPA, a prisoner has the initial burden to plausibly allege that some government action imposed a substantial burden on the plaintiff's religious exercise. See Hartmann v. Cal. Dep't of Corr. and Rehab., 707 F.3d 1114, 1125 (9th Cir. 2013). Government action imposes a substantial burden on a religious exercise for purposes of RLUIPA if it puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (quoting Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)). If a plaintiff makes the required showing, the burden shifts to the defendant to establish that, as applied to the particular plaintiff, the challenged government prison policy furthered a compelling governmental interest, and that the defendant used the least restrictive means to further that interest. See

18

Holt, 135 S. Ct. at 863.

As explained <u>supra</u> in Section IV.F, Plaintiff fails to allege facts establishing that the denial of group worship could amount to a substantial burden. Plaintiff's allegations about the denial of group worship are entirely conclusory, as he does not explain who denied him access to group services, what religious belief he holds, and how the inability to attend group services impacts his religious practice. <u>See</u> Complaint at 22. Therefore, Plaintiff's RLUIPA claim must be dismissed.

## H.    **State-Law Claims**

Plaintiff alleges state-law claims against various defendants under California Civil Code § 52.3, California Code of Civil Procedure § 340.5,[8] and California Government Code §§ 815(a), 815.2, 815.6, 820, and 820.9. <u>See</u> Complaint at 3-7, 32-33, 35-36, 39, 41-43.[9]

Under the California Government Tort Claims Act (the "Act"), a plaintiff may not sue a public employee or entity for money damages arising out of an injury to person or property unless a claim is presented to the public entity's board within six months after the cause of action accrues. <u>See</u> Cal. Gov't Code §§ 911.2, 945.4. The claim must include a "general description of the . . . injury . . . so far as it may be known at the time of presentation of the claim." Cal. Gov't Code § 910(d). If a claim is filed between six months and a year after the cause of action accrues, then the claimant may apply to present a

[8] Plaintiff cites both the non-existent California Civil Code § 340.5, <u>see</u> Complaint at 3, and California Code of Civil Procedure § 340.5, <u>see</u> <u>id.</u> at 7, 35-37, which pertains to the statute of limitations for negligence actions against health care providers and does not establish an independent cause of action.

[9] Plaintiff also contends that various defendants violated his rights under the California Constitution but cites no provision therein. <u>See</u> 32-33. As such, these claims are subject to dismissal.

late claim. See Cal. Gov't Code § 911.4. The claim presentation requirement is an element of a cause of action for damages against a public entity or official, and failure to present a claim will result in dismissal of state-law claims. See State v. Superior Court, 32 Cal. 4th 1234, 1240-41, 1244 (2004). Federal courts thus require presentation for state-law claims that seek damages against state public employees or entities. See Karim-Panahi, 839 F.2d at 627 (finding that failure to comply with Act's claim-filing requirements bars pendent state-law claims). Thus, state-law claims may proceed only if the claims were first presented as required by the Act. See Volis v. Hous. Auth. of L.A. Emps., 670 F. App'x 543, 544 (9th Cir. 2016) (finding that district court properly dismissed state-law claims because plaintiff "failed to file a timely claim as required by the California Government Claims Act").

Plaintiff does not allege that he complied with the Act through timely presentation of his claims. Therefore, his state-law claims are subject to dismissal.

## I. **Injunctive Relief**

Finally, Plaintiff requests various permanent injunctions concerning RCSD's treatment of individuals civilly detained while awaiting SVPA proceedings. See Complaint at 46-49. This Court finds that Plaintiff lacks standing to seek this injunctive relief.

To have standing to seek prospective injunctive relief, a plaintiff must allege a "real or immediate threat" that he will again face the same injury. City of L.A. v. Lyons, 461 U.S. 95, 111 (1983). "[P]ast exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." Nelson v. King Cty., 895 F.2d 1248, 1251 (9th Cir. 1990); see also O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). Standing must exist "throughout all stages of litigation." Hollingsworth v. Perry, 570 U.S. 693, 705 (2013).

At the time Plaintiff filed his Complaint, he was already civilly committed at Coalinga State Hospital and was no longer in the custody of RCSD. See Complaint at 19, 26. Accordingly, Plaintiff has failed to allege facts establishing a "likelihood of substantial and immediate irreparable injury" that would allow for standing. See O'Shea, 414 U.S. at 502. Therefore, Plaintiff's request for injunctive relief must be dismissed.

## V.

## CONCLUSION

For the foregoing reasons, the Complaint is subject to dismissal. Because it is not absolutely clear that the Complaint's deficiencies cannot be cured by amendment, dismissal is with leave to amend. Accordingly, if Plaintiff desires to pursue his claims, he must file a First Amended Complaint ("FAC") within thirty-five (35) days of the date of this Order, remedying the deficiencies discussed above. The FAC should bear the docket number assigned in this case, be labeled "First Amended Complaint," and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to use.

**Plaintiff is admonished that if he fails to timely file a FAC, this action may be dismissed with prejudice for failure to diligently prosecute and for the reasons discussed in this Order.**

Dated:  November 20, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

Fed. R. Civ. P. 31

(a) WHEN A DEPOSITION MAY BE TAKEN.

(1) *Without Leave.* A party may, by written questions, depose any person, including a party, without leave of court except as provided in Rule 31(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

(2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

(A) if the parties have not stipulated to the deposition and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 30 by the plaintiffs, or by the defendants, or by the third-party defendants;

(ii) the deponent has already been deposed in the case; or

(iii) the party seeks to take a deposition before the time specified in Rule 26(d); or

(B) if the deponent is confined in prison.

(3) *Service; Required Notice.* A party who wants to depose a person by written questions must serve them on every other party, with a notice stating, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs. The notice must also state the name or descriptive title and the address of the officer before whom the deposition will be taken.

(4) *Questions Directed to an Organization.* A public or private corporation, a partnership, an association, or a governmental agency may be deposed by written questions in accordance with Rule 30(b)(6).

(5) *Questions from Other Parties.* Any questions to the deponent from other parties must be served on all parties as follows: cross-questions, within 14 days after being served with the notice and direct questions; redirect questions, within 7 days after being served with cross-questions; and recross-questions, within 7 days after being served with redirect questions. The court may, for good cause, extend or shorten these times.

(b) DELIVERY TO THE OFFICER; OFFICER'S DUTIES. The party who noticed the deposition must deliver to the officer a copy of all the questions served and of the notice. The officer must promptly proceed in the manner provided in Rule 30(c), (e), and (f) to:

(1) take the deponent's testimony in response to the questions;

(2) prepare and certify the deposition; and

(3) send it to the party, attaching a copy of the questions and of the notice.

(c) NOTICE OF COMPLETION OR FILING.

(1) *Completion.* The party who noticed the deposition must notify all other parties when it is completed.

(2) *Filing.* A party who files the deposition must promptly notify all other parties of the filing.